Good morning, Your Honors. May it please the Court, I'm Attorney Nora Milner and I'm representing Petitioner in this case, Mr. Mario Carrillo. I'd like to review with the Court three critical issues that I believe are extremely relevant to this case before you today. The first one really relates specifically to the decision of the district court to grant summary judgment in this case and whether there were material facts in dispute that were not amenable to a motion for summary judgment. In order for summary judgment to be granted, there has to be a material showing that there were no genuine issues of fact and that the moving party is entitled. Roberts. Did you respond to the motion for summary judgment? Milner. Your Honor, we did not respond, as I was going to tell the Court. We were in within a 90-day or a little less window where Petitioner had filed a motion for summary judgment. The government responded a week later. We responded to their response. The Court denied our motion. Then the government moved for a motion very shortly. And then the case was sent for oral argument. It was our position that we were intending to respond to that motion. Kennedy. If I may inquire, here's my concern with your suggestion that we ought to reverse and remand because there are material issues. Number one, of course, you didn't respond. But more importantly to me, even though the government seems in their brief to suggest that they, for purposes of this appeal only, they're willing to concede that your client was at one time issued a change of status, it seems to me that there's absolutely nothing in the record, and that's going to be my question, that would support that an application was ever filed or that your client ever received a card legitimately in his own name as opposed to just simply a mistaken issuance. So my question is whether we even need to get to Monet or the other cases cited, whether or not there's, you would, if we sent this back, whether or not you have any evidence to present at a trial that your client actually filed an application and more importantly ever actually received, whether properly or incorrectly or not, a change of status in his name as opposed to the mistaken file case name. Your Honor, that, the point is very well taken. In fact, a remand to the district court would allow us to develop the record. Mr. Carrillo did receive an actual resident alien card in his name that was issued by the Immigration Service in Los Angeles. It was not a card that he falsified or that he purchased. It actually came from the computer database in Los Angeles. But the evidence is that that was issued to the wrong person. Your Honor, that has not been clarified. We had requested three times from the government, through the Freedom of Information Act, copies of Mr. Carrillo's file. Three times they were basically stalled on us. Finally, through the district court, we were able to get those records. They did ultimately answer. We did, Your Honor. And basically what they've given you is somebody else's file because that, it seems to be that's the file on which this card, if it was actually issued, was erroneously issued. But more importantly, has discovery terminated? This is a summary judgment motion. Did you file it? Was it filed at the end of the discovery available period? Your Honor, the complete discovery was never completed in the district court. We received, in fact, a skeletal four or five pieces of information, which indeed referred to my client. So there is an existing file. And that was one of the purposes of continuing the case, so that we would be allowed to develop the record and determine through fact-finding. So discovery had not completed. It had not, Your Honor. Okay. And again, unfortunately, the case was extraordinarily delayed due to the fact that the Freedom of Information Act was not completed. But you just don't know, in answer to my question, you just don't know yet if there will be any evidence to show whether your client was actually actually received a change of status, lawfully or not. We — that's correct, Your Honor. However, we do know that Mr. Carrillo did receive a replacement card in 1993 based on the original issuance of the card in 1992. That came from the Los Angeles computer database. That was not based on Mr. Carrillo's — Finally, and then I need to shut up. But finally, what bothers me, though, is that's just not enough. Even — even — no matter how we interpret the Monet case — Correct. — if your client never received a change of status, rightfully or wrongfully, then there's no position to make claim to a lost card that was unlawfully, illegally, or incorrectly just sent to the wrong addressee. Your Honor, I believe that the position of the government on that is a red herring. Frankly, there are indeed a number of files existing, and I believe that the record could at least be developed so that correct fact-finding could take place on this issue. I believe that, again, going back to my argument that summary judgment was not appropriate, there were genuinely material facts that should have been developed, and I believe that it was error to issue a summary judgment in this matter. Just so I'm clear on what your argument is, you're saying that summary judgment was not appropriate because there were factual disputes. You're not claiming there was, assuming the facts are undisputed, any kind of due process violation. Yes and no, Your Honor. I agree with you on your first point, absolutely. I believe that there are indeed facts that have not been fully developed. The due process argument is a separate and distinct issue, which I will, if time permitted, address to the Court. But I believe that the most important issue is that, in fact, there are issues in this case that have never really been fully developed for proper review. And I believe that the facts are undisputed. Well, the facts, Your Honor, would be that the Mr. Carrillo did, in fact, receive a card in his name with his correct date of birth. They admit that. I'm sorry, Your Honor? They admit that. Yes. Okay. So that's not in dispute. Well, and secondly, that the card was lost and it was then issued by the Los Angeles office again. That's not disputed either. Third, what authority did the government have to take the card? So that's a legal question, not a fact question. That's right, Your Honor. But second, assuming that the card was lifted without any opportunity for Mr. Carrillo to respond to that, for example, he was, I believe that it's appropriate that the record be developed that at the time of the naturalization interview, he was actually threatened with arrest. Would that – would the lifting of the card then be an appropriate method, or did it, in fact, result in a form of intimidation? Releasing a card under threat of arrest is hardly an opportunity to be heard. Well, if they said, would you be so kind as to turn over your card, I mean, would that change anything? I think there's a big difference, Your Honor, between being threatened with being arrested and we would like you to surrender your card. So it's the threat that prevents it? I believe that under threat of intimidation and immediate arrest, almost anyone in the face of authority would capitulate the average individual normally. So you're not claiming they had to give him a hearing, they just had to be polite, basically? No, Your Honor. I believe that the threat of intimidation and arrest removes the ability for the government to respond in a forthright and calm manner. Anybody in the face of authority, particularly, again, when you go into a government office, when you're threatened with immediate arrest, the fear that there may be a, you know, a Federal agent standing outside the door to immediately take you out of the country is a significant intimidation to almost anyone. And I believe that that's a fact that could very well be developed. If I understand the record, what there is relating to the card indicates that it was issued because there was a sponsoring spouse or family member and your client admitted that he didn't have any such. That's correct, Your Honor. Well, doesn't that mean he's not entitled to the card that he's got? Well, then the question is, if he's not entitled to the card, how did it come out of the Los Angeles database at all, not only once but twice? My client may be entitled to the card. But why would it matter if he's not entitled to the card? Well, Your Honor, isn't he entitled to rely on authority of the United States government? For example, if I go to the DMV and I apply for a driver's license and I pass all the tests and they give me a license, then I have an accident. If it's later determined that the DMV made a mistake, am I guilty of driving without a license? When I relied on the authority of the government to issue me the properly created card, we all rely to a great extent on the authority of our government stating that this, in fact, exists. And I believe with an individual that's been a permanent resident for going on 13 or 14 years, there should be some opportunity to occur. Maybe I could answer that question presumptively, I'm sorry, with another question. If your client had simply received this card addressed to another person with the same name in here, or if your client had stolen the card with the name, same name of another person, same as your client's name, would he have the right to rely upon the fact that he possesses an alien card for his status, change of status? I think, you know, Your Honor, your question is well put and certainly I acknowledge. However, the difference with your supposition is that there's an element of fraud or misrepresentation. The government has indicated that all along my client was assumed innocent. No. No, not that your client committed any fraud, just that he received the card in error. Would he have the right to rely upon his possession, simple possession of such a card? If he had made a valid application and gone through what he believed were the correct procedures, Your Honor, I would say that he would have a ---- And if the cards were issued in response to that. Yes, Your Honor. I believe that that would be. Your Honor, if there are no further questions, I would like to reserve just a minute for rebuttal. Thank you, Ms. Gilday. Thank you, Your Honor. Good morning, Your Honors. Sam Bettweat for the government. May it please the Court. I showed that the deadline for discovery was December 31, 2004, and I did take the And then I thought ---- This summary judgment motion filed after the deadline? Yes, Your Honor. I see. February, a couple months later. So we did go through discovery, and I produced everything I found, I could find, about this to opposing counsel and was attached to my brief. It simply looks as though there was a false record created in the database, of the government's database, and that's what fooled a replacement card facility to issue a replacement card. There's no evidence that anything was ever ---- I'd like you to be absolutely clear on this. Is the record at this stage, after completion of discovery, very clear that this card was simply issued to the wrong addressee, this person with the same name, but who was not represented in the file to which the card responded when it was sent? Your Honor, and I think this is part of the record, is that the conclusion that the government's reached after exploring all the databases and all is that there may have been another person with a similar name that was used to be a decoy, but there was actually a record created somebody, which we assume it was the government. So in fairness, you just don't know. Does the card have an alien number on it that corresponds to this wrong file? Do you know, in fact, that the card that allegedly was issued, it's been lost, of course. The prior card was lost, and the one that you seized, you seized, you have. Is there anything on that card that corresponds precisely to this wrong file, the file of another person who had the same name? Your Honor, this card, the replacement card, it's the only card we show that was ever issued to this individual, was issued to the appellant. A record was created by somebody fraudulently. And does it have an alien number or any other number that corresponds precisely to this wrong file, the file that you do have for someone else who did file an application? No, Your Honor, I believe it's a completely new number that was just created. In fairness, the record is that we don't know yet whether that card, issued in error or not, the replacement card, quote, unquote, was issued in response to this incorrect file. We do know, Your Honor, that the replacement card was issued on the basis of a fraudulent database record that was created in the government database. So we believe it was an employee that was involved in this. How do you know it's fraudulent and not just a mistake? Well, because there's nothing to back it up. It comes out of, completely out of nowhere. And whoever did this knew what the card facility looked at. That's all they looked at is this van, anyway. They only looked at one window. They issued a replacement card. If they had looked behind this false file that had been created, they would see there was nothing there. No history whatsoever. Okay. So it was, however you slice it, it was issued to him by mistake. Yes, Your Honor. By what right do you take it without giving him a hearing first? Well, Your Honor, the only thing that's being taken away is the card. There's no status for it. I understand that. But by what right do you do that? What authority do you have to confiscate the card without a hearing? Well, he's not entitled to the card. Well, I mean, that's for an I.J. to say, isn't it? He could be placed in removal proceedings, and that could be an issue. If they have any evidence they want to present that he's entitled to a card. Well, I mean, you've got to start the removal proceedings. You go to see the I.J. You tell them your song and dance about how it was issued incorrectly, and they tell you why it wasn't. Then the I.J. decides. I mean, the problem I have with the case is I don't understand by what authority, after he's had the card for a period of time, some person who works for I.N.S. can just confiscate the card. Well, it happens all the time, Your Honor. Whenever an alien is taken into custody, placed in removal proceedings, the green card is taken. For one reason, it acts as a travel document, and so that prevents travel. There are all kinds of security reasons for doing that. If someone's arrested, you can take their property and pound it? Well, it's not. I don't believe the card is the property of the alien. Well, you can take what's in his possession. We'll call it what's in his possession, okay? I mean, you take his belt. You take his shoelaces. You can take his wallet. Okay. But just somebody walking on the street, an I.N.S. agent can come over and say, give me your green card? Well, if he makes a mistake, there could be repercussions. I mean, in this case, there was no mistake. I mean, if it's a forged card, I can understand that. If it's a stolen card, I can understand that. If you're telling me they issued him the card, decided, well, whatever. I mean, it's a card, and it's his name on it. You issued it to him. And I just don't understand the authority by which it can be confiscated without a hearing. Well, I didn't research that issue of whether he has a property interest in the card. Well, don't the regs say after five years, there's a sort of a limitations period after which it has to be, you have to go to court and revoke it? I think if Your Honor's talking about a rescission proceeding, again, he had no status. There's nothing to rescind. There's no status. Well, that's your story. I mean, that's your contention. And I understand if you prove it, you're right. That's right. Well, anytime anybody's arrested, there could be a mistake. I'd like to echo that question a little bit in just a little bit more detail. If the person has their status revoked, the regulation has provisions for their required surrender of the card. One thing that I didn't see, was there any regulation that requires, if a card is stolen or issued incorrectly, is there a regulation that requires self-surrender? I'm not aware of such a regulation. Just one more thing about the, at the time of the interview, he was represented. He was, there were two interviews. At the second interview, he was advised by his counsel to withdraw his naturalization application. He was represented. In fact, it's part of the record that his counsel rebuked him for having gone forward and applied for naturalization. What's the relevance of that? He wasn't entitled. He's not really a lawful permanent resident, but just tried to take this thing too far. You should have given us a little bit better authority for, I'm sure you're probably right, that especially if it's a current practice, that agents take cards in particular circumstances, like they find somebody illegally possessing at the border when they're trying to enter, or they're arrested and they've got, it's not their card, or the agent can see that it's an improperly or a fraudulent card. But you haven't given us that authority. I assume that there is some such authority, but the assumption may not be right, and you've said you're not aware of the authority. So that's what concerns me. No, Your Honor. I cannot point to a particular regulation or statute on the confiscation of cards. It's just, they're not the property of the alien. If the alien's not entitled to one. You're just telling us for the first time standing here that that is, however, the practice. Oh, yes. The card may not be issued to anyone but a lawful permanent resident. So if the person's not a lawful permanent resident, the implication would be if they can't be issued one, then they can't have one. Can we leave that to the opinion of the clerk on duty that day when he goes in? I'm sorry, Your Honor? That's left to the discretion of the person on duty that day? Yes, Your Honor. Or do you have to establish that to an IJ in a removal proceeding? Your Honor, if, again, if there's status, no status was being taken away, only a card. And there was no status to take away. If the position of the officer was, you know, you're a lawful permanent resident who's deportable and we're taking your card away, then, yes, there has to be a status determination. But there was no status to take away. The determination was you have no status. The alien admitted he could not establish that he had any status. And without status, he's not entitled to a card. So the card is leaked. I mean, that's what presumably led to the summary judgment, I assume, that or at least it was very important to it. Yes, Your Honor. And his admission was he didn't have any such relative or anything. Did he ever just say, well, I'm not a permanent resident? No, he never said that, Your Honor. I mean, we did go through, that's why we went through the summary judgment to see if there was some fact that was going to arise out of this, some allegation, something to support his getting a card. But nothing came up whatsoever. I took his deposition. I explored all possibilities. Never was entitled to a card. So the card is tied directly to the status. It's not just taking the card. Without status, he's not entitled to a card. All right. Thank you very much. Thank you, Your Honors. Ms. Milner, you have a minute. Thank you, Your Honor. Your Honor, just to clarify to the Court, regarding the government's reliance on the fact that the issuance of the card is merely ministerial, that's misplaced. The card is nothing more than a reflection, an outward reflection of a particular status. In fact, Your Honors are correct. The clerk on duty has no more authority to rescind the status of a lawful permanent resident without a full hearing in due process, which was not accomplished in this case. It's the regular practice of the Immigration Service when they remove a card, a permanent resident card from a permanent resident alien, they must give that resident alien a document called an I-94 with his or her picture and fingerprint so that alien has some evidence that he or she is in the United States under color of law. To simply remove that alien's card without a hearing and place that alien in a permanent residence with absolutely no documentation whatsoever restricts travel, right to work, and overall freedom of liberty and peace of mind, which has really caused my client great distress. So in fact, the lifting of the card is maybe the physical act, but a clerk has no more authority to rescind that status than an INS arresting officer, and that should have been done through due process and hearing. Thank you, Your Honor. Thank you. Thank you, Mr. Betley. The case just argued is submitted. We'll stand at recess for the morning. Thank you.
judges: Canby, Silverman , Jones